**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
(Civil Division)

|  |  |
|---|---|
| Theresa Gustafson ) | |
| 3305 Flagstone Dr. ) | |
| Melissa, TX 75454 ) | |
| ) | |
| and ) | |
| ) | |
| Maria Wilson ) | |
| 640 Long Acres Land ) | |
| Yardley, PA 19067 ) | |
| ) | |
| and ) | |
| ) | |
| To the use of Andrea Chirieleison ) | |
| 1872 James Ave. ) | |
| State College, PA 16801 ) | |
| ) | |
| and ) | |
| ) | |
| To the use of Christopher Passaro ) | |
| 311 Timberline Trail ) | |
| Saint Paul, MN 55127-6026 ) | |
| ) | Case No. _____ |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Serve:     Jefferson Sessions ) | |
|              U.S. Attorney General ) | |
|              950 Pennsylvania Ave., N.W.) | |
|              Washington, D.C. 20530-001 ) | |
| ) | |
|              Rod J. Rosenstein ) | |
|              U.S. Attorney ) | |
|              6406 Ivy Lane ) | |
|              Suite 800 ) | |
|              Greenbelt, MD 20770 ) | |
| ) | |
| Eugene S Craig, Jr., M.D., ) | |
| ) | |
| Serve:     8118 Good Luck Road ) | |
|              Lanham, MD 20706 ) | |

|  |  |
|---|---|
|  | ) |
| Defendants. | ) |
|  | ) |

# COMPLAINT FOR DAMAGES

Plaintiffs, Theresa Gustafson and Maria Wilson, through undersigned counsel and pursuant to 28 U.S.C. § 1346 and 28 U.S.C. §§ 2671 *et seq.* and MD Code Ann. Courts & Judicial Proceedings §3-904, submit this Complaint for Damages against the United States of America and Eugene S. Craig, M.D., an employee and agent of the United States Department of Veterans Affairs, and in support thereof states:

## I.
## Parties

1. Theresa Gustafson is a resident of the State of Texas and the daughter of the decedent, Anthony G. Passaro.  Ms. Gustafson's last known address is identified above.

2. Maria Wilson is a resident of the State of Pennsylvania and the daughter of the decedent, Anthony G. Passaro.  Ms. Wilson's last known address is identified above.

3. Andrea Chirieleison is a beneficiary of the Estate of Anthony G. Passaro.  She has been identified, located and notified of the claim, but has declined to participate in this action. She is considered to be a "use plaintiff" in this case as defined in Md. Rule 15-1001.

4. Christopher Passaro is a beneficiary of the Estate of Anthony G. Passaro.  He has been identified, located and notified of the claim, but has declined to participate in this action. He is considered to be a "use plaintiff" in this case as defined in Md. Rule 15-1001.

5. Eugene S. Craig, Jr., M.D. ("Dr. Craig") is a resident of the State of Maryland.  At all times relevant herein, Dr. Craig was an employee and agent of the United States Department of Veterans Affairs.

6. The United States Department of Veterans Affairs is part of the executive branch and is a federal agency of the United States government.

## II.
## Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 28 U.S.C. §1346(b) in that the individual named herein, on the date in question, was an employee or agent, acting within the scope of his office or employment, of an agency of the United States of America, in a circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of Maryland where the act or omission described herein occurred.

8. On August 16, 2017, a Standard Form SF-95 was sent to the United States Department of Veterans Affairs notifying them of Plaintiffs' claim. The information on Standard Form SF-95 was supplemented by: (1) a detailed statement of claim, setting forth the nature and extent of each injury Mr. Passaro sustained; (2) a list of witnesses; and (3) electronic copies of all of Mr. Passaro's medical records that were in the possession of his Executrix at that time.

9. On November 30, 2017, the Department of Veterans Affairs, through its General Counsel for the United States Department of Veterans Affairs respond to the SF-95 submitted on Mr. Passaro's behalf and denied liability.

10. Prior to institution of this action, Plaintiff filed a claim with the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") in accordance with his obligations under Md. Code, Cts. & Jud. Proc. § 3-2A-01, *et seq.* Included with Plaintiff's claim was a waiver of arbitration. On February 11, 2018, the Maryland Health Care Alternative Dispute Resolution Office issued an order transferring Plaintiff's claim to the United States District Court. Accordingly, this claim is ripe for suit in this Court. A copy of the February 11 Order from HCADRO is attached hereto as **Exhibit 1**.

11. Venue is proper pursuant to 28 U.S.C. §1331(b) in that Defendant Dr. Craig is a resident of the State of Maryland and Maryland is the judicial district where a substantial amount of the events giving rise to the claim occurred.

### III.
### Facts Common to All Counts

12. Plaintiff incorporates the factual allegations contained in paragraphs 1-8 above as if fully set forth herein.

13. Anthony Passaro ("Mr. Passaro") was an individual who, in the late 1950's and early 1960's, served in the United States Air Force.

14. In 2010, Mr. Passaro was a resident of the State of Maryland. As a veteran, Mr. Passaro was eligible for medical treatment at VA hospitals overseen and operated by the United States Department of Veterans Affairs.

15. In 2010 and before, Mr. Passaro received medical treatment at the VA Medical Center at Perry Pointe, MD.

16. Dr. Craig was Mr. Passaro's treating physician in 2010. At all times herein, Dr. Craig was an employee and/or agent of the Department of Veterans Affairs.

17. At all times herein, Dr. Craig, a medical doctor, was acting within the scope of his employment with the Department of Veterans Affairs in treating or examining Mr. Passaro.

18. In 2010, Mr. Passaro presented to the VA Medical Center in Perry Pointe, MD with "hematuria, gross." Dr. Craig was Mr. Passaro's treating physician and, because of Mr. Passaro's symptoms, he directed that a Volumetric CT be performed on Mr. Passaro on December 8, 2010.

19. The findings of the CT examination stated:

> Abdomen: There are no urinary tract calcifications. There is a mildly hyperdense, enhancing soft tissue mass measuring 2.3 x 2.0 cm in the

4

right upper pole sinus. Following contrast, the mass is seen to be intra-calyceal and is associated with mild urothelial irregularity. It is most likely urothelial carcinoma. There is no extension into renal parenchyma or renal pelvis. The kidneys are otherwise unremarkable with no evidence of renal mass or cyst. There is no hyponephrosis, adenopathy or renal vascular involvement. The ureters are normal in course and caliber without evidence of thickening or obstruction.

20. Also, the Radiology Report stated:

Impression:

Right upper calyceal enhancing mass compatible with urothelial carcinoma. The remainder of the urinary tract is unremarkable.

21. Jade Wong, M.D., a radiologist who is <u>not</u> an employee of the Department of Veterans Affairs, verified the information and the report was placed in Mr. Passaro's records.

22. Although the results of the CT exam were placed in Mr. Passaro's records, no one at the VA Medical Center at Perry Pointe, MD notified Mr. Passaro of the fact that the CT exam revealed he had a "Right upper calyceal enhancing mass compatible with urothelial carcinoma." Dr. Craig, who was Mr. Passaro's treating physician, never informed Mr. Passaro that he had kidney cancer.

23. After he was examined by the VA and Dr. Craig in December 2010, Mr. Passaro, an avid sailor, sailed his boat during the Christmas holiday, but returned to his home in Maryland and lived there until March, 2011. At that point, he left Maryland and sailed his board down the east coast of the United States. Mr. Passaro received mail at the various docks and harbors he used during his tours.

24. Before he left Maryland, however, he again saw Dr. Craig in February and March, 2011. Again Mr. Passaro received no information about his diagnosis.

25. During his travels, Mr. Passaro received medical treatment at two other VA hospitals in Charleston, SC and Hampton, VA. Though it is believed and therefore alleged that

5

medical providers at the VA hospitals in Charleston, SC and Hampton, VA had access to Mr. Passaro's medical records and therefore should have known about his cancer diagnosis, no one at the VA hospitals in Charleston, SC or Hampton, VA disclosed to Mr. Passaro that he had kidney cancer.

26. On or about April 28, 2014, Mr. Passaro presented to the VA Outpatient Clinic in Viera Beach, Florida for gross hematuria. Three days later, Mr. Passaro underwent a second CT exam at the Viera Beach VA Outpatient Clinic. The report for the 2014 CT scan noted that "previous ct showed right upper calyceal enhancing mass compatible with urothelial cancer." This information was conveyed to Mr. Passaro on or about May 1, 2014 and that disclosure was the first time anyone informed Mr. Passaro that he had kidney cancer.

27. By this time, however, the cancer had spread. The May 1, 2014 CT report stated:

> There is a large infiltrative mass occupying nearly the entirety of the right kidney measuring 12.6 x 8.3 x 7.8 cm. There is delayed enhancement of the right kidney and washout. Multiple calcifications are seen within this tumor. No calcifications seen in the left kidney. There is moderate amount of urothelial thickening throughout the proximal right ureter without any contrast visible in throughout the right ureter. The tumor extends into the right renal pelvis. No significant filling defects are seen in the left ureter or in the bladder. Multiple small somewhat rounded lymph nodes are seen in the right hilar region the largest measuring approximately 9 mm. Other smaller lymph nodes are seen in along the IVC and adjacent to the right ureter.
>
> No significant bowel wall thickening can be seen. No air-fluid levels are present within the large or small bowel. No significant mentric edema is seen.
>
> The lung bases are clear. The bones show no evidence of lytic or blastic lesions.
>
> The vascular structures show mild atherosclerotic disease. Less than 3 cm along its entire course.
>
> Impression:

>1. Large infiltrative mass in the right kidney measuring 12.6 x 8.3 x 7.8 cm consistent with transitional cell carcinoma. Small subcentimeter lymph nodes in the right renal hila and adjacent to the IVC suspicious for metastatic disease. No evidence of filling defects within the urinary bladder. 2. Suspect liver cirrhosis. Correlation for risk factors is requested. 3. Cholelithiasis.

28. On June 11, 2014, Mr. Passaro underwent a right nephrectomy where his providers described the cancer as "high grade papillary urothelial (TCC) carcinoma squamous differentiation, invading throughout the renal parenchyma into perirenal fat with positive malignant margin in upper right fold."

29. While Mr. Passaro was rehabilitating from the nephrectomy, he developed a bladder infection and was sent to a civilian hospital for treatment. While at the hospital, he received an x-ray which revealed a spot on his lung. On June 23, 2014, Mr. Passaro underwent a CT of the chest where the right nephrectomy and history of cancer were noted. The June 23, 2014 CT report concluded that the kidney cancer had spread to his lungs.

30. By October 2014, Mr. Passaro's condition deteriorated to the point where he had to move to Texas to live with his daughter, Ms. Gustafson.

31. In 2015, Mr. Passaro received a right lung biopsy which confirmed the diagnosis of squamous cell carcinoma. In May 2015, Dr. Meredith Clary of the VA Dallas Oncology Department noted that the carcinoma was "Stage IV." Dr. Clary noted in her records that Mr. Passaro's condition was terminal, giving him 8 or 9 months to 1 year to live depending on whether Mr. Passaro received "double chemotherapy." Mr. Passaro was being treated with monotherapy, so his overall median survival was predicted to be less than one year from May 2015.

32. Mr. Passaro's condition worsened further in June 2015 and, between June 2015 and January 2016, he was admitted to hospice care, but he was later discharged. Thereafter, he was forced to pay for private care in his home at a cost of $2,574 per month.

33. On January 20, 2016, Mr. Passaro underwent another CT scan which confirmed the diagnosis of Stage IV cancer in his lungs, cancer he would not have had if Dr. Craig properly disclosed to Mr. Passaro the presence of cancer in his kidney in 2010. Had Dr. Craig disclosed to Mr. Passaro that he had cancer in his kidney and had Mr. Passaro learned of the presence of cancer in his body before May 2014, he would have received treatment and likely experienced no spread of the cancer to his lungs.

34. As it turned out, because Mr. Passaro was not informed by his doctors that he had cancer, the cancer spread to his lungs.

35. On July 30, 2016, Mr. Passaro died as a result of "end stage complications of advanced renal cell kidney cancer."

## IV.
## Causes of Action

### COUNT I – Wrongful Death -Eugene S. Craig, M.D.

36. Plaintiffs incorporates by reference the factual allegations contained in paragraphs 1-35 above as if fully set forth herein.

37. At all times herein, Dr. Craig, as Mr. Passaro's treating physician, had the duty to act reasonably, provide reasonable treatment, and inform him about health issues that may arise. This duty included, among other things, the obligation to disclose to Mr. Passaro the results of tests and examinations that Dr. Craig ordered so that Mr. Passaro could make reasoned and informed decisions about his health and future treatment and to treat Mr. Passaro in accordance with all applicable standards of care.

38. Dr. Craig breached applicable standards of care and the duties he owed to Mr. Passaro by not disclosing to Mr. Passaro the fact that his December 2010 CT exam revealed that he had kidney cancer and failing to report to Mr. Passaro that he had cancer thereafter so that he could receive treatment and failing to take other actions that may become known during discovery.

39. As a direct and proximate result of Dr. Craig's breach, Mr. Passaro died as a result of Dr. Craig's breach of his duties.

40. The acts and omissions of Dr. Craig, as an employee, servant, or agent of the United States, constitute an actionable claim under the laws of the State of Maryland.

41. As a direct and proximate result of Mr. Passaro's death, the Plaintiffs suffered loss of support and other benefits that Mr. Passaro would have provided has he not died as a result of Dr. Craig's negligence.

42. Pursuant to Md. Rule § 15-1001, Plaintiffs hereby add the following use-plaintiffs, who are surviving children of Anthony Passaro, and who may be entitled by law to recover damages by reason of Mr. Passaro's wrongful death: Andrea Chirieleison 1872 James Ave., State College, PA 16801, and Christopher Passaro 311 Timberline Trail Saint Paul, MN 55127-6026.  Plaintiffs and the offices of Brown | Gould | Kiely LLP neither represent these additional use-plaintiffs nor seek damages on their behalf.

**WHEREFORE**, Plaintiffs and Use-Plaintiffs demand judgment be entered in her favor against Defendant Dr. Eugene Craig, for compensatory damages to be determined at trial, but not less than $1,245,000, plus pre-judgement interest, costs, and such other and further relief as justice may require.

### COUNT II – Vicarious Liability, *Respondeat Superior*, and/or Agency Wrongful Death – United States of America

43. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-42 above as if fully set forth herein.

44. At all times relevant to this case, the directors, officers, operators, administrators, employees, agents, and staff of the Department of Veterans Affairs, including but not limited to Dr. Craig, were employed by and acting on behalf of the Department of Veterans Affairs and the United States government.

45. At all times relevant to this case, the directors, officers, operators, administrators, employees, agents, and staff of the Department of Veterans Affairs, including but not limited to Dr. Craig, were acting within the scope of their agency and employment with the Department of Veterans Affairs and the United States government.

46. The directors, officers, operators, administrators, employees, agents, and staff of the Department of Veterans Affairs, including but not limited to Dr. Craig, acted recklessly, failed to comply with the relevant standard of care, and breached the duties they owed to the Plaintiff, which directly and proximately caused Mr. Passaro's injuries.

47. As a direct and proximate result of the negligence of the Department of Veterans Affairs, an agency of the United States government, and its employees, including Dr. Craig, Mr. Passaro sustained serious personal injuries, resulting in extensive medical expenses, extreme pain and suffering, mental anguish, loss of the enjoyment of life and, ultimately, death.

48. The acts and omissions of the Defendant the United States constitutes an actionable claim under the laws of the State of Maryland.

49. Pursuant to Md. Rule § 15-1001, Plaintiffs hereby add the following use-plaintiffs, who are surviving children of Anthony Passaro, and who may be entitled by law to recover damages by reason of Mr. Passaro's wrongful death: Andrea Chirieleison 1872 James Ave., State College, PA 16801, and Christopher Passaro 311 Timberline Trail Saint Paul, MN

55127-6026.  Plaintiffs and the offices of Brown | Gould | Kiely LLP neither represent these additional use-plaintiffs nor seek damages on their behalf.

**WHEREFORE**, Plaintiffs and Use-Plaintiffs demands judgment be entered in their favor against Defendant the United States of America, for compensatory damages to be determined at trial, but not less than $1,245,000, plus interest, costs, and such other and further relief as justice may require.

Respectfully submitted,

*/s/ Jesse D. Stein*
Daniel Brown (Bar No. 14360)
Jesse D. Stein (Bar No. 17663)
Ian G. Thomas (Bar No. 03883)
BROWN│GOULD│KIELY, LLP
7316 Wisconsin Avenue, Suite 200
Bethesda, MD  20814
Telephone:  (301) 718-4548
Facsimile:  (301) 718-8037
Email: dbrown@bgklawfirm.com
           jstein@bgklawfirm.com
           ithomas@bgklawfirm.com

*Counsel for Plaintiffs*